Muneerah Crawford Pro Se
605 Willow Rd #231
Menlo Park California 94025
650-304-7166

FILED
MAR 26 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

#3 ifp np

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MUNEERAH CRAWFORD, PRO SE

Plaintiff,

vs.

KAISER PERMANENTE HOSPITAL REDWOOD CITY CALIFORNIA DBA KAISER FOUNDATION HEALTHPLAN INC.,

Defendant

Case No.: Number CV 19 1573 LB

PROFESSIONAL MEDICAL NEGLIGENCE
VIOLATION OF THE FEDERAL EMTALA ACT
42 U. S.C. 1395DD

DEMAND FOR JURY TRIAL

INTRODUCTION

This case involves Kaiser Permanente Hospital, Redwood City California, and their failure to provide stabilizing care. (1) Based on the plain language of the statute EMTALA continues past admission until the patient is actually stabilized(2). Plaintiff Muneerah Crawford was not stable at the time of discharge and suffered harm as a result. All "discharges" from a hospital are considered transfers under the EMTALA ACT and it is the Hospitals duty to provide sufficient treatment at the time of transfer(3) Kaiser Permanente Redwood City failed to provide that treatment before discharge. Kaiser Foundation Healthplan is a 501c charity and they own Kaiser Permanente Hospital Redwood City California. Kaiser Foundation Healthplan has a directive to all Hospital employees, Doctors, Nurses, and persons involved in patient care to abide by the Federal EMTALA ACT, and to document in the patient's medical record that they have abided by indicating Medicare requirements have been fullfiled.

Muneerah Crawford

Muneerah Crawford

EMTALA requires hospitals to conduct an examination that is "reasonably calculated to identify the patient's medical condition. *Hoffman v. Tonnemacher,* 425 F.Supp 2d 1120,1130 (E.D. Cal. 2006). If a hospial performs that examination and detects an emergency medical condition, it must stablize the emergency medical condition detected. The Plaintiff Muneerah Crawford presented to the emergency room in severe respiratory distress, and informed the emergency room doctor, Dr. Ruiz that she had adverse reactions to Albuterol in previous hospital's she had been admitted to. The emergency room doctor performed a sufficient examination, and tests and treated the Plaintiff with Albuterol inhaled treatment. Dr. Ruiz informed the Plaintiff that she was suffering from pneumonia also, and that he advised her to stay in the hospital for two or three days to get her condition stabilized and under control. Dr. Ruiz stated, admission not observation care. The Emergency department and Dr. Ruiz knew the Plaintiff is not a member of Kaiser Foundation Healthplan. They also were informed when the Plaintiff came into the emergency room that she had medicare and medi-cal (healthplan of San Mateo Insurance). The registration clerk was presented with the Plaintiff's Medi-cal card and the Plaintiff told the emergency room clerk that her medicare number infact was her social security number with the letter A attached to it and that she had left her card at home. The clerk stated that she would refuse to state on the record that the Plaintiff had medicare insurance because she did not submit the card at the time she entered the emergency department. The Plaintiff informed the clerk she could verify the Plaintiff's medicare coverage by calling the provider line, and submitting the Plaintiff's social security number, date of birth and address. The Plaintiff was taken from the emergency department to be admitted into the hospital.

Upon admission, the Plaintiff was never told she was being admitted for Observation care, and she was not given any information or medicare notices which explained her rights as a medicare patient. The Plaintiff was admitted by a nurse. The admitting nurse started to argue with the Plaintiff about her insurance, and that she should have gone to the county hospital instead of Kaiser Permanente, Redwood City. The Plaintiff informed her that she was driving close by the hospital when she began to have severe breathing problems the previous night and that she had come to the emergency department and was treated by Dr. Ruiz, who knew she was not a member but advised her to come back if her condition got worse. The following evening March 25, 2017, the Plaintiff came back because she was having severe breathing problems, and the same doctor advised that the Plaintiff stay in the hospital, and never suggested that she should go to another hospital.

The entire time the Plaintiff was in the emergency department, her roomate George Silva was with her and witnessed all the conversations between the Plaintiff and the Doctor and nurses. The roomate also observed the conversation between the Plaintiff and the admitting nurse also. The Plaintiff was taken to a private room at 7pm on March 25, 2017. A doctor came to the room less then one hour later and did a small exam of the patient who was having severe breathing problems. No doctor ever came to examine the Plaintiff after that time, or during the next 14 hours before the Plaintiff was discharged. A respiratory technician came once during the night and gave the Plaintiff a Albuterol treatment. The Plaintiff takes the Albuterol treatment, starts to wheeze, cough, and her heart races, then she seems to get better but only for a short amount of time about 4-5 minutes, and then she goes into a very severe breathing attack or bronchial spasms. At approximately 9am, on the morning of March 26th 2017, the Plaintiff's roomate arrived to see her and how she was doing. While the roomate

was there a hospital cleaning lady came into the room. The cleaning lady informed the Plaintiff that she was discharged. The Plaintiff immediately became alarmed because she was having severe breathing every 3 to 4 minutes and she said go get a nurse or doctor. A nurse came into the room with a portable phone. She informed the Plaintiff she was discharged. The Plaintiff immediately complained that she was not okay and to please get the doctor immediately. The nurse called someone on the phone, and then handed the phone to the Plaintiff. The person on the phone did not identify themselves as a doctor but instead told the Plaintiff that she was discharged by the doctor, and that she was fine and she should go home. The Plaintiff argued that she was unable to even stand up and pleaded to see the doctor. The person on the phone stated that the Plaintiff had bronchial spasms which would go away. The Plaintiff insisted on seeing a doctor immediately and the person on the phone hung up. The Plaintiff was upset and scared so she angrily told the nurse that this was illegal and that she did not want to leave, and the nurse told the Plaintiff to leave or they would call the Police to have the Plaintiff removed from the hospital. The Plaintiff then relented and stated that she could not walk out of the hospital due to her condition, and that she needed help to get to her car. The nurse arranged a wheel chair and a van to drive her across the street to her car. The minute the Plaintiff got into her car, she started to have serious breathing problems and she felt faint. The Plaintiff was terrified about her condition and she drove to the pharmacy to get her prescriptions but the pharmacy was closed on Sunday. The Plantiff drove to her home, and her condition continued to get worse and she ended up calling 911, and taking an ambulance to another emergency room, Stanford Healthcare Hospital the same day she was discharged from Kaiser Permanente Hospital Redwood City on March 26th 2017. The ambulance recorded the Plaintiff's blood pressure as 200/102 as they transported her

to Stanford Hospital Emergency room, in severe respiratory distress.

FACTS

Kaiser Permanente Hospital AKA Kaiser Foundation Healthplan is guilty of Professional Negligence. Plaintiff Muneerah Crawford was harmed by Kaiser Permanente Hospital in Redwood City California, failure to give reasonable care and stablize her emergency Medical condition. (Vistica v. Presbyterian Hospital & Medical Center, Inc. (1967) 67 Cal. 2D 465, 469(62 Cal Rptr. 577, 432 P 2d 193). It is the duty of any hospital that undertakes the treatment of of a ill person to use reasonable care and diligence in safeguarding her, and such care and dilligence is measured by the capacity of the patient to care for herself. (ValenTin v. La Societe Francaise de Bienfaisance Muturelle (1946) 76 Cal. App. 2D 1, 4 (172 P. 2d 359).

Kaiser Permanente owed the Plaintiff a duty of care, and Kaiser Permanente breached that duty, and violated the Federal EMTALA ACT, and the Plaintiff was harmed by Kaiser Permanente's failure to abide by the laws of California and Federal Laws in her Care on March 25, 26, 2017.

-Kaiser Permanente violated Medicare rules, discriminated against the Plaintiff because they did not inform her of her rights as a Medicare patient to call QIO Quality Improvement Organization to dispute her discharge. Without that dispute she was not entitled to appeal the discharge.

-Kaiser Permanente's doctor who discharged the Plaintiff refused to discharge the Plaintiff in person, refused to examine the Plaintiff to make sure she was in stable condition before being discharged, and refused to counsel the Plaintiff on her condition.

-Kaiser Permanente failed to recognize the Plaintiff was allergic to Albuterol and the failed

to recognize the Plaintiff's paradoxial worsening of her condition, putting her at risk of serious bodily injury, and risk of death by refusing to stablize her condition before discharge, and or stabilize her condition and properly transfer her to another hospital.

-Kaiser Permanente failed to undertake a risk/benefit assessment of the Plaintiff's condition, and instead just wrote out a discharge which places Kaiser Permanente at liability for the EMTALA ACT.

-The definition of "admitted" for the purposes of ending EMTALA liability is critically important for hospital's and physicians. The Plaintiff was admitted for Observation not as a "In Patient "Admission described in The definition of "admitted" for the purposes of ending EMTALA requirements. The Plaintiff was not admitted as a "In Patient" instead she was admitted for Observation only. Kaiser's liability does not end until they either stabilize the patient for transer or they admit the patient as a "In Patient" as defined by Medicare rules chapter 409.10a. This is the same definition as the Medicare Manual which is used for Medicare payment so hospitals know it well.

Observation care does not meet the Medicare Standard for In-Patient Admissions so EMTALA rules continue to apply

-Kaiser Permanente knew the EMTALA regulations and has blogged on the internet the rules of EMTALA, and also have directives to their employees reguarding EMTALA Rules.

-California Law requires notification to patients that they are being admitted to the hospital for observation.

-Kaiser Permanente discrimintorily discharged the Plaintiff in less then 24 hours in a attempt to avoid Medicare notice rules, federal notice rules, and EMTALA rules.

-Plaintiff filed two complaints with Kaiser Member Services, and the complaints were ignored, and Kaiser Member Services said the complaint was unsubstantiated and told the Plaintiff if she disagreed to go to small claims court. -The Plaintiff was unstable when she left kaiser Permanente the morning of March 26, 2017, and she was suffering from an allergic reaction to the Albuterol Treatments which caused her condition to become critical. -Serious Side Effects of Albuterol inclued Bronchial Spasms, Wheezing, Chest Tightness, Dangerously High Blood Pressure, Severe Shortness of Breath, Increased Urination, Irregular or Uneven Heartbeats, Chest Pain, and Muscle Weakness, Dizziness, and Low Oxygen. The Plaintiff was suffering from all of these symptoms and more as documented by Stanford Hospital blood tests. As a direct result of Kaisers failure to stabilize the Plaintiff's condition, her condition evolved into Abuterol Induced Lactic Acidosis and Shock.

JURSIDICTION AND VENUE

This is an action for declaratory relief and damages and other appropriate relief as the Court may deem proper. H. R. Rep. No.241, 99th Cong., 1st Sess (Part 3), at 3 (1985). Because this action is arising under laws of the United States this Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331. Because Plaintiff and Defendant both reside within San Mateo County the Venue is proper under 28 U.S.C. 1391(b)(1).

INTRADISTRICT ASSIGNMENT Civil L.R. 3-2(c) The basis for assignment to The United States District Court, Northern District of California is proper because both the Plaintiff and the Defendant resided in San Mateo County, California.

## EMTALA STATUATORY FRAMEWORK

EMTALA STATES, inter alia, that any hospital that received Medicare funds and operates an emergency department:

1. must stablize any individual determined to have an emergency medical condition 42 U.S.C.§ 1395dd(b);

2. may not transfer(which includes discharge)any individual with an emergency medical condition who has not been stabilized, unles inter alia, the individual requests a transfer or a physicians certifies that the benefits of a transfer outweigh the increased risks to the patient. see id. § 1395dd(c).

EMTALA defines emergency medical condition as a medical condition manifesting itself by acute symtoms of sufficient severity(including severe pain) such that the absense of immediate attention could be reasonably expected to result in placing the health of the individual in serious jeopardy, cause serious impairment to bodily functions, or serious dysfunction of any bodily organ or part Id. § 1395dd(e)(1)(A). EMTALA defines to stabilize to mean to provide such medical treatment of the condition as may be necessary to assure, within a reasonable medical probability, that no material deteroriation of the condition is likely to result from or occur during the transfer of a individual from a facility Id. § 1395dd(e)(3)(A).

DIRECTIVES AND DEFENDANTS FAILURE TO COMPLY WITH EMTALA

There are a number of conditions that can arise during, or that can be exacerbated by repeated treatment with nebulized B-2 antaonists like Albuterol in otherwise healthy patients can result in hyperlactatemia during a moderate to severe asthma exacerbation. The Plaintiff discovered after she was discharged that she has bronchial Asthma. She did not know the reason that she was in severe respiratory distress that she was suffering a Asthma Attack. With excessive albuterol treatments, four in less then 24 hours, and the Plaintiff's declared allergy to Albuterol. The Plaintiff should have been monitored during that observation to make sure that the Plaintiff was not becoming more unstable, and examing the Plaintiff before discharge when the Plaintiff was suffering symptoms of acute asthma exacerbations. Elevated lactate is a marker of sepsis and systemic shock. It is also seen in life threatening asthma when respiratory fatique and hypoxaemia become overwhelming. The Plaintiff's blood was not tested after she was put into Observation care, and her lactic level rose drastically the same day she was discharged from Kaiser Permanente and admitted into Stanford Healthcare Hospital. Kaiser Permanente failed to comply with EMTALA and their own directives.

Kaiser Permanente's failure to follow EMTALA, and their failure to monitor the Plaintiff's condition resulted in a prolonged severe asthma attack often called asthmaticus, these attacks do not respond to routine prophylaxis and treatment with inhaled bronchodilators. This causes local broncoconstriction, airway edema, and mucus production. The Plaintiff suffered from all including repeated bronchial spasms every three to four minutes. If the condition could be easily treated with

bronchodilators then the Plaintiff would not need to go to a emergency room. Repeated treatment of nebulized bronchodilators fits the definition of insanity, doing the same thing over and over expecting a good result and instead the condition deteroriates more. The interventions of last resort should be primary interventions along with close monitoring. Medicare requires that Observation care be given the same level of care as a inpatient status reguardless of the patients condition. That was not performed. Kaiser Permanente failed to give the same level of care to the Plaintiff's and violated the EMTALA ACT when they illegally discharged the Plaintiff without a doctor exam insuring that the Plaintiff's condition was stable at Discharged, and infact they put the Plaintiff's life in danger as she was not stable to drive home in that condition.

## MEMORANDUM OF POINTS & AUTHORITIES


42 U.S.C. 1395Dd The Federal EMTALA ACT page 1

Hoffman v. Tonnnemacher 425 F. Supp 2d 1120, 1130 page 2

Vistica v. Presbyterian Hospital & Medical Center, Inc. (1967) Page 5
67 Cal. 2D 465 (62 Cal Rptr. 577, 432 P2d 193)

Valentin v. Lasociete Francaise de Bienfaisance Muturelle (1946) Page 5
76 Cal. App. 2D 1,4 (172 P. 2d 359)

42 U.S.C. 1395dd(b) Page 8

See id 1395dd (c) Page 8

Part id 1395dd (e) (3) (A) P. 8

Prayer For Relief

Any person who suffers personal harm as a result of a violation of The EMTALA ACT is entitled to damages available for personal injury in the State of California. California has put a cap on Personal Injury Damages and the Plaintiff is fully aware of that law. The Plaintiff suffered Emotional Harm, Physical Harm, Pain and Suffering, The Plaintiff requests $100,000, and in addition that every medical bill paid by Medicare or Healthplan of San Mateo be reimbursed including the ambulance bill to those respective agencies.

This was a gross violation of the EMTALA ACT and the Plaintiff requests That the court award puntive damages at the Court's disgression.

Muneerah Crawford Pro Se
605 Willow Rd #231
Menlo Park California 94025
650-304-7166

Muneerah Crawford
March 26, 2019

Muneerah Crawford, Pro Se
605 Willow Rd. #231
Menlo Park California 94025
650-304-7166

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUNEERAH CRAWFORD, PRO SE<br>VS.<br>KAISER PERMANENTE HOSPITAL REDWOOD CITYCALIFORNIA DBA KAISER FOUNDATION HEALTHCARE, INC.<br>Defendant | Case No.:<br><br>PROFESSIONAL MEDICAL NEGLIGENCE VIOLATION OF THE FEDERAL EMTALA ACT 42 U. S. C. 1395DD |

**JURY DEMAND OF PLAINTIFF MUNEERAH CRAWFORD, PRO SE**

Pursuant to Federal Rule of Civil Procedure Fed. R. Civ. P. 38(b) Plaintiff Muneerah Crawford demands a Trial by Jury in the above captioned of all Issues triable by jury.

March 26, 2019

/s/ Muneerah Crawford

Muneerah Crawford, Pro Se

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Muneerah Crawford Pro Se
605 Willow Rd #231, Menlo Park CA 94025

**DEFENDANTS**
Kaiser Permanente Hospital Redwood City CA
DBA Kaiser Foundation Healthcare Inc

(b) County of Residence of First Listed Plaintiff: San Mateo
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Muneerah Crawford Pro Se
650-304-7166

Attorneys *(If Known)* Kaiser Permanente
Legal Department PPO
1950 Franklin street Oakland CA 94612

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

CV 19 1573 LB

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury (MC)
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☒ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**V. ORIGIN** *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 U.S.C. 1395dd
Brief description of cause: Professional Negligence Violation of EMTALA Act

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE 3/26/2019
SIGNATURE OF ATTORNEY OF RECORD Muneerah Crawford Pro Se

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______